1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    HONG KONG UCLOUDLINK                      Case No. 18-cv-05031-EMC
     NETWORK TECHNOLOGY LIMITED, et
8    al.,

9                    Plaintiffs,              **ORDER GRANTING PLAINTIFFS'
                                              MOTION TO DISMISS FIFTH AND
10             v.                             SIXTH COUNTERCLAIMS**

11   SIMO HOLDINGS INC., et al.,              Docket No. 75

12                   Defendants.

13

14         The instant case began as a patent infringement lawsuit filed by certain uCloudlink entities

15   against certain SIMO entities.  The case now includes counterclaims brought by certain SIMO

16   entities against certain uCloudlink entities for trade secret misappropriation.

17         Counterclaimants are three SIMO entities:

18         (1) SIMO Holdings Inc. ("SIMO").

19         (2) Skyroam, Inc. ("Skyroam, Inc.").

20         (3) Shenzhen Skyroam Technology Co., Ltd. ("Skyroam Shenzhen").

21         Counterdefendants (also Plaintiffs in the case) are two uCloudlink entities:

22         (1) Hong Kong uCloudlink Network Technology Limited ("uCloudlink Hong Kong").

23         (2) uCloudlink (America) Ltd. ("uCloudlink America").

24         Currently pending before the Court is Plaintiffs'/Counterdefendants' motion to dismiss the

25   counterclaims for trade secret misappropriation (the fifth and sixth causes of action).  The Court

26   previously granted Counterdefendants' motion to dismiss these counterclaims but gave

27   Counterclaimants leave to amend.  *See* Docket No. 67 (order).  Counterdefendants argue that the

28   amended counterclaims are still deficient.

United States District Court
Northern District of California

1    Having considered the parties' briefs and accompanying submissions, as well as the oral

2    argument of counsel, the Court hereby **GRANTS** the motion to dismiss the trade secret

3    misappropriation counterclaims.

4    **I.    FACTUAL & PROCEDURAL BACKGROUND**

5    In the operative second amended counterclaims ("SACC"), Counterclaimants allege as

6    follows with respect to the trade secret misappropriation claims.

7    "The overall technology at issue involves providing users of mobile devices such as

8    phones and hotspots ('uCloudlink devices') the ability to travel internationally and access data

9    through those devices without having to pay expensive roaming fees or purchase a country-

10   specific SIM card for each new country visited." SACC ¶ 26.

11   "In 2008, SIMO founded and patented its virtual SIM technology, some of which" it

12   disclosed in patents. SACC ¶ 87. "In 2013, SIMO launched its vSIM platform," which "delivers

13   local data, internationally, allowing the user to connect to dozens of different cellular networks

14   without changing his or her SIM card." SACC ¶ 88.

15   Skyroam[1] owns trade secrets related to

16   solutions for optimizing the virtual SIM technology. Skyroam's
     trade secrets include, *inter alia*, methods and solutions for
17   optimizing the distribution of seed SIM, protocol for upgrade
     designs, methods of use for proxy communication servers, virtual
18   SIM allocation, design of the backend billing system, and data link
     management for carrier re-authentication.
19

20   SACC ¶ 95. The trade secrets "significantly increase the usability, reliability, and consistency of

21   the connections required for mobile hotspot users through vSIM technology." SACC ¶ 99.

22   In April 2013, Skyroam hired Wang Bin as its Systems Architect.[2] *See* SACC ¶ 112.

23   Previously, Wang Ban had "worked with Counterdefendants' CEO Gao Wen and other

24   uCloudlink founders and/or individual investors at . . . Huawei."[3] SACC ¶ 9. In 2011, Gao Wen

25

---

26   [1] In the SACC, Counterclaimants refer to Skyroam, Inc. and Skyroam Shenzhen collectively as "Skyroam." *See* SACC at 9.

27   [2] It appears that, technically, Skyroam Shenzhen was Wang Bin's employer. *See* SACC ¶ 12.

28   [3] It appears that, technically, Gao Wen is the CEO of uCloudlink Hong Kong. *See* SACC ¶ 20.

1    and "several other Huawei colleagues" left Huawei to form Counterdefendants and related

2    uCloudlink entities to compete with Counterclaimants.  SACC ¶ 11.  Wang Bin did not go with

3    Gao Wen and these colleagues but instead joined Skyroam Shenzhen in April 2013 (*i.e.*, some two

4    years later).  *See* SACC ¶ 11.

5        As Systems Architect for Skyroam, Wang Bin "obtained detailed knowledge" of

6    Skyroam's trade secrets, "including solutions for roaming SIM cards, virtual SIM allocation, [and]

7    design of backend billing system."  SACC ¶ 113.  In addition, while employed by Skyroam,

8    "Wang Bin authored numerous specification documents based on information that Skyroam

9    engineers disclosed to him."  SACC ¶ 120.  During his employment with Skyroam, Wang Bin

10   copied certain Skyroam trade secrets to a USB drive and then downloaded them to his personal

11   computer.  *See* SACC ¶ 125.

12       In August 2013 – *i.e.*, just four months after he started working at Skyroam – Wang Bin

13   left employment with Skyroam.  *See* SACC ¶ 12.  Then, "just one month after leaving Skyroam,"

14   Wang Bin started working for uCloudlink Shenzhen (actually, a predecessor entity of uCloudlink

15   Shenzhen) "as a system engineer for testing, maintenance, and technical support of backend

16   servers."  SACC ¶ 126.  Although Wang Bin was formally hired by uCloudlink Shenzhen, he

17   actually interviewed with Tan Zhu, a Vice President of uCloudlink Hong Kong.  *See* SACC ¶ 127.

18   At some point, Wang Bin was promoted from being a system engineer to Director of Operation

19   and Maintenance Department "to support operation and maintenance of backend servers."  SACC

20   ¶ 128.  Then, in March 2017, Wang Bin "began serving as the leader of the Security Group at

21   uCloudlink Shenzhen, responsible for establishing information security systems, security

22   compliance, and audit."  SACC ¶ 131.

23       During his time with uCloudlink Shenzhen, Wang Bin transferred the Skyroam trade

24   secrets he had copied to his uCloudlink work computer.  *See* SACC ¶ 129.  "Counterclaimants

25   were able to identify at least one Chinese patent application, CN105491555A, [submitted by

26   uCloudlink Shenzhen[4]] that discloses the contents of the Skyroam Confidential Documents copied

27

28
---
[4] The patent application was assigned to uCloudlink Shenzhen.  *See* SACC ¶ 136.

3

over from Wang Bin's Skyroam computer to his uCloudlink computer." SACC ¶ 132 (adding that this patent application lists Wang Bin and Gao Wen as co-inventors). The technical disclosure for this patent application "includes large sections that were *copied word for word* from the stolen Skyroam trade secret document." SACC ¶ 133 (emphasis in original). Other patents "that uCloudlink applied for and owns that list Wang Bin as an inventor and that are based on or otherwise include some of Counterclaimants' stolen trade secrets" can be identified in ¶ 137 of the SACC. SACC ¶ 137 (identifying five other patent applications). The patent applications appear to have been filed in 2015 and/or 2016. *See* SACC ¶¶ 137, 173. There is a "lack of evidence of any conception or reduction to practice" for "any of the inventions allegedly conceived and reduced to practice" which is indicative of the fact that "[t]he 'inventors' did not memorialize any of their 'ideas' [because] they already existed *word for word* in documents stolen from Skyroam." SACC ¶ 139 (emphasis in original).

"Counterdefendants manufacture, offer for sale, and sell products and services in the United States that embody the Wang Bin Patents, and therefore, are based, at least in part, on Skyroam's trade secrets and the Skyroam Confidential Documents." SACC ¶ 179.

On October 12, 2018, as part of a patent infringement lawsuit that Skyroam entities filed against uCloudlink entities in a New York district court, uCloudlink Hong Kong and uCloudlink America supplemented a response to an interrogatory and identified Wang Bin as a current uCloudlink employee who had formerly worked for Skyroam Shenzhen. *See* SACC ¶ 140. On the same day, the uCloudlink entities produced nearly 30,000 pages of documents and "[b]uried in this massive production were 14 internal Skyroam documents. Many of these documents were labeled by Skyroam as 'Confidentiality Level: Top Secret' and/or bore Skyroam's trademark." SACC ¶ 141 (referring to these documents as the "Skyroam Confidential Documents").

On October 19, 2018, a hearing was held before the New York district court during which the parties discussed Wang Bin and the Skyroam documents. During the hearing, uCloudlink Hong Kong and uCloudlink America admitted that Wang Bin "explicitly refused to cooperate with [their] forensic expert . . . hired to create an image and preserve the contents of Wang Bin's personal computer." SACC ¶ 145.

1    On November 7, 2018, Wang Bin was deposed as part of the New York patent

2  infringement case. *See* SACC ¶ 149. During the deposition, he refused to answer many questions

3  "based on a vague assertion of 'personal privacy.'" SACC ¶ 151 (alleging that there were "at least

4  16 different occasions" where this happened). The SIMO entities moved to compel his testimony

5  and the New York district court granted the motion. *See* SACC ¶ 151. The next day, when Wang

6  Bin's deposition was scheduled to continue, uCloudlink Hong Kong and uCloudlink America

7  "unilaterally cancelled the deposition citing that a conflict had recently 'arisen' between [them]

8  due to the Court's order compelling Wang Bin's testimony." SACC ¶ 152. Wang Bin's

9  deposition was rescheduled for November 12, 2018. *See* SACC ¶ 153. During this deposition,

10  "Wang Bin's new personal counsel, who[m] uCloudlink Hong Kong and America paid for,

11  advised him on multiple occasions to refuse to answer questions based on the Fifth Amendment,"

12  and, thus, "Wang Bin refused to answer more than forty (40) questions on Fifth Amendment

13  grounds." SACC ¶ 154. And "[e]ven when he did answer, Wang Bin was evasive or provided

14  clearly disingenuous answers" – *e.g.*, claiming "not to remember the technology that Skyroam was

15  developing" or "not to have an understanding of the technologies that Skyroam was developing

16  while he worked there." SACC ¶ 155. "uCloudlink terminated Wang Bin either immediately after

17  the second day of his deposition or close in time thereto." SACC ¶ 158.

18    According to Counterclaimants, "Wang Bin's misappropriation of Skyroam trade secrets

19  was the fulfillment of a conspiracy with senior management at Counterdefendants to obtain

20  Skyroam trade secrets in order to unfairly compete with Skyroam." SACC ¶ 159. That is,

21    Wang Bin and Gao Wen, [along with] unknown other uCloudlink
     founders, planned for Wang Bin to join Skyroam in a senior
22    technical role, learn as much as he could about Skyroam's trade
     secrets and purloin as many confidential documents relating to the
23    trade secrets as possible, then leave Skyroam and bring the trade
     secrets to uCloudlink in order to compete with Skyroam.
24

25  SACC ¶ 174 (emphasis added); *see also* SACC ¶ 183.

26    In support of this alleged conspiracy, Counterclaimants point to the following:

27    • Before working for Skyroam, Wang Bin worked at Huawei with Gao Wen, "the

28      founder of uCloudlink and the CEO of uCloudlink Hong Kong." SACC ¶ 160. Wang

5

1    Bin admitted he was acquainted with Gao Wen.  *See* SACC ¶ 160.

2    • When deposed, Gao Wen claimed he could not remember which individuals loaned

3    him money to help him found uCloudlink.  *See* SACC ¶¶ 160-62.

4    • Gao Wen directed Wang Bin to leave Huawei "in early 2013 to join Skyroam."  SACC

5    ¶ 165.  (Gao Wen and others had left Huawei two years earlier in 2011.  *See* SACC ¶

6    11.)

7    • Just four months after Wang Bin started working for Skyroam, he "suddenly demanded

8    that his salary be doubled despite the fact that he understood the offered salary when he

9    accepted the Skyroam position, and had no expectation that it would change during his

10   first four months of employment."  SACC ¶ 41.  Skyroam rejected the salary request,

11   "as he knew [it] would," which allowed him to "abruptly resign[] from Skyroam."

12   SACC ¶ 166.

13   • After Wang Bin was hired by uCloudlink, he "transferred at least some subset of the

14   Skyroam Confidential Documents he stole from Skyroam to his uCloudlink work

15   computer, and those documents ended up in the possession, custody or control of

16   uCloudlink Hong Kong and uCloudlink America."  SACC ¶ 176.

17   • Although uCloudlink was founded back in 2011, "it had no operational product for sale

18   before they hired Wang Bin from Skyroam."  SACC ¶ 171.  Within several months

19   after Wang Bin joined uCloudlink, "uCloudlink was able to launch its first product in

20   2014."  SACC ¶ 171.

21   • Wang Bin was promoted a few months after uCloudlink launched its first commercial

22   product – just a year after he started working there.  *See* SACC ¶ 171.

23   • "After joining uCloudlink Shenzhen, Wang Bin was listed as the sole or co-inventor on

24   at least seven new patent applications related to SIM technologies."  SACC ¶ 169.

25   "These patent applications include several Skyroam trade secrets that are either

26   reflected in the Skyroam Confidential Documents Wang Bin misappropriated from

27   Skyroam or relate directly to ongoing research and development that Wang Bin

28   participated in during his employment with Skyroam."  SACC ¶ 170.

United States District Court
Northern District of California

6

1     •   Even though Wang Bin was named as "an inventor of a significant percentage of

2          Counterdefendants' patent applications," Counterdefendants tried to conceal his

3          significance "by placing him in a role that is unrelated to research and development."

4          SACC ¶ 173.

5     •   When deposed, Gao Wen was asked about Wang Bin's "various uCloudlink patent

6          applications," and Gao Wen "curiously" claimed that "Wang Bin was not involved in

7          working on those technologies on behalf of uCloudlink." SACC ¶ 164.

8     •   Gao Wen was listed as a co-inventor along with Wang Bin on several of the patent

9          applications. *See* SACC ¶¶ 222, 224. "[N]either Gao Wen nor Wang Bin could

10          specify what Gao Wen contributed" with respect to those patents where he and Wang

11          Bin were listed as co-inventors. SACC ¶ 173.

12     •   There is a "lack of evidence of any conception or reduction to practice" for "any of the

13          inventions allegedly conceived and reduced to practice." SACC ¶ 139.

14     •   During his deposition, Wang Bin asserted his Fifth Amendment rights on multiple

15          occasions, including when he was asked whether other people were involved in his

16          efforts to take Skyroam's trade secrets. *See* SACC ¶ 154.

17       Based on, *inter alia*, the above allegations, Counterclaimants have asserted two causes of

18 action for trade secret misappropriation: one based on federal law (Defend Trade Secrets Act or

19 "DTSA") and one based on state law (California Trade Secrets Act or "CTSA").

20                 **II.**      **DISCUSSION**

21 A.    Legal Standard

22       To overcome a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss after the

23 Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v.*

24 *Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . .

25 suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d

26 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and

27 construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St.*

28 *Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a

1  complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient

2  allegations of underlying facts to give fair notice and to enable the opposing party to defend itself

3  effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial

4  plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

5  inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The

6  plausibility standard is not akin to a probability requirement, but it asks for more than a sheer

7  possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

8  B.    Misappropriation/Conspiracy Theory

9         As an initial matter, the Court takes note of the specific misappropriation – or rather,

10  conspiracy – theory Counterclaimants have committed themselves to, namely:

11
12
13
14
> Wang Bin and Gao Wen, [along with] unknown other uCloudlink
> founders, planned for Wang Bin to join Skyroam in a senior
> technical role, learn as much as he could about Skyroam's trade
> secrets and purloin as many confidential documents relating to the
> trade secrets as possible, then leave Skyroam and bring the trade
> secrets to uCloudlink in order to compete with Skyroam.

15  SACC ¶ 174; *see also* SACC ¶ 183.

16         This is notable because, in its prior order granting Counterdefendants' motion to dismiss

17  the trade secret misappropriation counterclaims, the Court took note that Counterclaimants had

18  offered two different theories:

19
20
21
22
> (1)  Before uCloudlink was formed, Wang Bin worked with
>      uCloudlink Hong Kong's CEO (Gao Wen) and other
>      uCloudlink founders at Huawei. They entered into a
>      conspiracy, agreeing that Wang Bin would seek employment
>      with Skyroam while the others would form uCloudlink as a
>      competitor. Wang Bin would learn Skyroam's trade secrets and
>      then leave, bringing the trade secrets to uCloudlink.

23
24
25
26
> (2)  Alternatively, even if there were no conspiracy, uCloudlink
>      knew or should have known that Wang Bin had
>      misappropriated Skyroam trade secrets after he was deposed in
>      November 2018 in the New York patent infringement case.
>      However, even after learning such, uCloudlink continued to sell
>      its products, which embody the Bin Patents. The Bin Patents
>      use Skyroam trade secrets.

27  Docket No. 67 (Order at 1-2); *see also* Docket No. 67 (Order at 2-3) (noting that, under the second

28  theory, Wang Bin was the original wrongdoer and Counterdefendants only became wrongdoers

8

after learning of Wang Bin's misappropriation during his deposition).

In the current counterclaims, Counterclaimants have now abandoned the second theory.[5]

Accordingly, the Court focuses on the viability of the first conspiracy theory. [6]

C.      Plausibility of First Conspiracy Theory

As noted above, under the first conspiracy theory, there was a conspiracy at the outset –

*i.e.*, all the way back in 2013, which was two years after Gao Wen had left Huawei to form the

uCloudlink entities, Gao Wen and Wang Bin (and possibly others) conspired to send Wang Bin to

Skyroam Shenzhen so that he could steal trade secrets for the benefit of Counterdefendants and/or

uCloudlink Shenzhen.

In the SACC, Counterclaimants have made new allegations not contained in the previously

dismissed pleading to support this conspiracy theory. The main new allegations are as follows: (1)

---

[5] This is likely because that theory was not sustainable given the Court's comments in its order. *See* Docket No. 67 (Order at 2-3) (noting that, according to Counterclaimants, Counterdefendants became wrongdoers after learning of Wang Bin's misappropriation during his deposition; however, "uCloudlink could not be a wrongdoer because, by the time it got involved, there was no trade secret" because the Bin Patents had already published the trade secrets and, "upon publication, any trade secret status was lost prior to the time of Wang Bin's deposition").

In their opposition, Counterclaimants ask the Court to reconsider its ruling here, but this is not the right time or place for Counterclaimants to make this request. If Counterclaimants wished to move for reconsideration, then they should have invoked the regular process required by the Civil Local Rules.

In any event, Counterclaimants' case for reconsideration is weak. For example, the Court's order did not cut any uCloudlink entity off from liability if it had been a wrongdoer from the outset – *i.e.*, conspiring with Wang Bin. In such a situation, the uCloudlink entity would be one of Wang Bin's "privies." *See* Docket No. 67 (Order at 3) (taking note of D.C. Circuit case where the court stated that, "'[o]nce the secret is out, the rest of the world may well have a right to copy it [as] well; but this should not protect the misappropriator *or his privies*'"; adding that, based on Counterclaimants' second misappropriation theory, "uCloudlink was not one of Wang Bin's privies because under the second theory, it had no material relationship with Wang Bin" – *i.e.*, "at the time of his theft and publication, uCloudlink stood in the same position as a member of the public").

In addition, although, at the hearing, Counterclaimants suggested that there are trade secrets at issue that were *not* published in the Bin Patents, the counterclaims never clearly alleged such.

[6] The Court acknowledges that Counterclaimants have technically asserted not only conspiracy but also aiding and abetting and/or concerted action. However, for purposes of the pending motion, whether the liability theory is cast as conspiracy, aiding and abetting, or concerted action is not relevant. All require uCloudlink's knowledge that the Skyroam trade secrets were stolen.

9

1    after having left Huawei in 2011, Gao Wen "directed" Wang Bin to leave Huawei "in early 2013

2    to join Skyroam," SACC ¶ 165; *see also* SACC ¶ 11 (alleging that Gao Wen and others had left

3    Huawei two years earlier in 2011); (2) Gao Wen claimed that he could not remember who helped

4    him found the uCloudlink entities, *see* SACC ¶¶ 160-62; (3) there was no operational uCloudlink

5    product until a few months after Wang Bin joined uCloudlink Shenzhen, *see* SACC ¶ 171; and (4)

6    there is a "lack of evidence of any conception or reduction to practice" for "any of the inventions

7    allegedly conceived and reduced to practice." SACC ¶ 139.

8           The Court concludes that these new allegations, along with the allegations previously

9    made, are still not enough to support a plausible conspiracy, especially given Counterclaimants'

10   contention that there was a conspiracy between Gao Wen and Wang Bin at the outset in 2013 (*i.e.*,

11   when Wang Bin left employment with Skyroam Shenzhen and was subsequently hired by

12   uCloudlink Shenzhen). Notably, most of the allegations in the counterclaims shed little light on

13   whether there was an agreement *at the outset*. The only allegation that addresses the timing

14   allegation is the allegation that Gao Wen "directed" Wang Bin to leave Huawei in 2013. But this

15   allegation is conclusory in nature; there are no specific factual allegations to back up this claim

16   and, in the absence of supporting allegations, the Court cannot credit such a conclusory allegation

17   under *Twombly* and *Iqbal*. Moreover, the plausibility of any "direction" given by Gao Wen is

18   questionable given that it was given two years after Gao Wen left Huawei, where he and Wang

19   Bin both worked – at least in the absence of any specific factual allegation corroborating the

20   claim.

21          Putting aside the "directed" allegation, the Court finds that the remaining allegations are

22   *consistent* with there being a conspiracy, but they do not establish a *plausible* allegation of a

23   conspiracy – in particular, a conspiracy originating in 2013 before Wang Bin left Skyroam

24   Shenzhen – within the meaning of *Twombly*. *See Twombly*, 550 U.S. at 553-57 (noting that, in a

25   Sherman Act § 1 case, the critical question is whether the challenged anticompetitive conduct

26   stems from an agreement to restrain trade; "when allegations of parallel conduct are set out in

27   order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding

28   agreement, not merely parallel conduct that could just as well be independent action"); *Iqbal*, 556

10

1  U.S. at 678 (stating that, "[w]here a complaint pleads facts that are 'merely consistent with' a

2  defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement

3  to relief"'").

4       Because the Court holds that no plausible conspiracy has pled, it need not address any of

5  the other issues raised by the parties in their papers – *e.g.*, whether it is plausible that uCloudlink

6  America was part of any conspiracy, whether uCloudlink Hong Kong and/or uCloudlink American

7  can be held liable on a single business enterprise theory,[7] and whether the federal DTSA claim can

8  apply extraterritorially.[8]

9  D.   New Conspiracy Theory

10      In the counterclaims as pled, Counterclaimants tendered only the first conspiracy theory

11  above and did not offer any new conspiracy theory – *e.g.*, that Wang Bin was the original

12  wrongdoer (*i.e.*, there was no conspiracy at the outset) and that, only *after* Wang Bin started to

13  work for uCloudlink Shenzhen, did Counterdefendants become aware that he had stolen Skyroam

14  trade secrets and decide to use that windfall to their advantage (*i.e.*, a conspiracy was later

15  formed).  At the hearing on the motion to dismiss, however, Counterclaimants asserted for the first

16  time a new conspiracy theory along these lines.  In particular, Counterclaimants argued that a

17  conspiracy was formed at the very least on October 23, 2015, when Wang Bin was an employee of

18  uCloudlink Shenzhen and participated in a patent evaluation conference with other uCloudlink

19  employees.  *See* SACC ¶ 134.  Implicitly, Counterclaimants take the position that, during this

20  patent evaluation conference, Wang Bin, for the first time, disclosed the fact that he had taken

21  Skyroam trade secrets because such trade secrets were relevant to the patent evaluation.

22      As an initial matter, the Court emphasizes that this new conspiracy theory was not actually

23

24  _____

[7] In order for this theory to be viable, Counterclaimants must still show that Wang Bin was
25  conspiring with some uCloudlink entity in the first place (*e.g.*, uCloudlink Shenzhen).  It is *that*
uCloudlink entity's involvement with Wang Bin that would be the basis for Counterclaimants to
26  argue, *e.g.*, that the entity operated as a single business enterprise with uCloudlink Hong Kong
and/or uCloudlink America.

27  [8] There is also no need to address this argument because Counterclaimants argue that there was
28  misappropriation in the United States when Counterdefendants sold products that use the Skyroam
trade secrets in the United States.

11

1    pled in the counterclaims.  At the hearing, Counterclaimants insisted otherwise, pointing to, *e.g.*, ¶

2    134 in the SACC, but nowhere in that paragraph do Counterclaimants make an assertion of

3    conspiracy as of October 23, 2015, when the patent evaluation conference took place.

4    Furthermore, the other allegations in the counterclaims clearly predicate a conspiracy based on the

5    first theory above only.  *See* SACC ¶¶ 159-83 (allegations under the heading "Counterdefendants'

6    Conspiracy with Wang Bin").

7    That being the case, the only question that remains for the Court is whether

8    Counterclaimants should be given leave to amend to assert this new conspiracy theory in a third

9    amended pleading.  The Court denies leave to amend.  Previously, Counterdefendants challenged

10   the trade secret misappropriation claims (as asserted in the first amended counterclaims) based on

11   a failure to plead a plausible conspiracy.  The Court granted Counterdefendants' motion and gave

12   Counterclaimants the opportunity to amend to correct deficiencies with their conspiracy theory.

13   Nothing prevented Counterclaimants from asserting, in the SACC, a conspiracy as of, *e.g.*,

14   October 23, 2015, or even at any earlier date,[9] but, for whatever reason, Counterclaimants –

15   represented by able counsel – did not do so, relying instead solely on the theory that Gao Wen and

16   Wang Bin entered into a conspiracy at or about the time he left Skyroam Shenzhen and went to

17   work for uCloudlink Shenzhen.  *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052

18   (9th Cir. 2003) (noting that a factor that a court may consider in deciding whether to give leave to

19   amend under Federal Rule of Civil Procedure 15 is "'repeated failure to cure deficiencies by

20   amendments previous allowed'").  Having committed themselves to this theory, Counterclaimants

21   are not entitled to a second bite at the apple on a theory that they chose not to plead.[10]  *See Wagh*

22   *v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003) ("The district court's discretion to deny

23

24   [9] For example, Counterclaimants do not assert that they only recently discovered new facts that
25   indicate a conspiracy was formed as of October 23, 2015.

26   [10] The Court also notes that the plausibility of the new conspiracy theory is highly questionable.
     Under the new conspiracy theory, Wang Bin would have worked for uCloudlink Shenzhen for two
27   years before revealing for the first time, at the October 2015 patent evaluation conference, that he
     had stolen trade secrets from Skyroam.  In addition, it is entirely possible that Wang Bin could
28   have participated in the conference and disclosed the trade secrets at the conference without
     disclosing the additional fact that he had stolen them from Skyroam.

1    leave to amend is particularly broad where the plaintiff has previously filed an amended

2    complaint."); *Chodos v. W. Publ'g Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("[W]hen a district

3    court has already granted a plaintiff leave to amend, its discretion in deciding subsequent motions

4    to amend is 'particularly broad.'"). *See, e.g.*, *Brown v. Fitzpatrick*, 667 F. App'x 267, 268 (9th

5    Cir. 2016) ("The district court did not abuse its discretion in dismissing [the pro se litigant's]

6    amended complaint without leave to amend after providing [him] with one opportunity to

7    amend."). This is especially true given that Counterclaimants have known about the alleged trade

8    secret misappropriation since approximately October 2018 and been litigating the

9    misappropriation issue since December 2018. *See* Docket No. 17 (motion for leave to add

10    counterclaims for trade secret misappropriation). Almost a year has passed and the counterclaim

11    pleading still is not settled, which is hampering this case from continuing on its normal course.

12    Although the Court has not yet set a trial date in the case, the counterclaim pleading needs to be

13    finalized. *Cf. Trans Video Elecs., LTD v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011)

14    (finding that a "motion to amend was taken in bad faith, more specifically, as a last-ditch attempt

15    to avoid the case being dismissed in its entirety").

### III.    CONCLUSION

17         For the foregoing reasons, the Court grants Counterdefendants' motion to dismiss the trade

18    secret misappropriation counterclaims. The dismissal is with prejudice; Counterclaimants do not

19    have leave to amend.

20         This order disposes of Docket No. 75.

21

22    **IT IS SO ORDERED**.

23

24    Dated: September 12, 2019

25

26    _____

27    EDWARD M. CHEN
      United States District Judge

28